NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 23, 2012
Decided March 29, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

JAMES E. SHADID, *District Judge*[*]

No. 11-1573

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

STEPHEN ROGERS,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.

No. 06 CR 00540

Matthew F. Kennelly,
*Judge.*

**O R D E R**

Stephen Rogers was convicted of knowingly transferring obscene matter to a minor ("Count 2"); knowingly receiving child pornography ("Count 3"); and enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct ("Count 4").

He appeals his conviction on Count 2, arguing that the image he transferred does not satisfy the legal definition of obscenity. He also challenges his convictions on Counts 3

---

* The Honorable James E. Shadid, United States District Court for the Central District of Illinois, sitting by designation.

and 4, arguing, first, that the district court erred by trying all four counts in a single trial. Suggesting that the jury misconstrued evidence on Counts 1 and 2 as evidence on Counts 3 and 4, as well as that the jury convicted him based upon its dislike of him, not on evidence, he claims that the district court's refusal to sever the counts unfairly prejudiced him.

Second, he contends that the district court erred by not instructing the jury that, to be convicted on Counts 3 and 4, he had to know the minor status of the person in the image he received and whom he tried to engage in sexually explicit conduct. This omission, he contends, constitutes reversible error and denied him a fair trial.

We affirm the district court on Counts 2 and 4, but we conclude that the district court erred in its instructions on Count 3 and that this error affected Rogers' substantial rights. We therefore, reverse, on that count.

## I. Background

### A. Factual Background[1]

In 2005,[2] Stephen Rogers entered an AmericaOnline chat room and began a conversation with Andrea. At the time, Andrea was fourteen years old.

AOL does not store instant messages, and Andrea did not save her instant message conversations with Rogers. Per Andrea's account of her interactions with Rogers, however, she informed him that she was fourteen years old within minutes of beginning their conversation.

Rogers began emailing Andrea directly.[3] In one exchange, Rogers asked Andrea if she had "any other pics" and told her to "talk to [him] sexy."[4] In a later exchange, Andrea emailed Rogers a picture of her face and wrote, "here...have a pic.." Andrea subsequently emailed him a second picture of herself from the waist up.

---

[1]Additional factual background may be found in our ruling in *United States v. Rogers*, 587 F.3d 816 (7th Cir. 2009).

[2]Rogers, in his brief, incorrectly describes this exchange as occurring in 2006.

[3]The emails between Rogers and Andrea were discovered during a search of Rogers' Yahoo! email account. The police had obtained a warrant.

[4]We have not edited Andrea, "Emily," or Rogers' quotations for spelling, grammar, or punctuation.

The record below is unclear as to whether Rogers expressly asked Andrea to send additional pictures of herself.  Andrea, in her testimony, states both that he did request additional pictures and that he did not.  Nevertheless, she states that she interpreted his tone as "nagging" and, accordingly, that she believed sending him nude pictures would appease him.  She took pictures of her naked breasts and genitals with a digital camera.  On June 14, 2005, Andrea sent the pictures to Rogers in two separate emails.  In the first, she wrote, "here I hope yeah happy" and attached a closely cropped picture of her vagina.  In the second email, she attached a picture of her breasts.

These interactions underlie Counts 3 and 4 of the Government's Second Amended Indictment.  *See infra* Part I.B.

In 2006, Cook County Deputy Sheriff Tiffany Ruffoni participated in an online undercover investigation.  She posed as a thirteen-year-old girl named "Emily" from Forest Park, Illinois.  She posted a personal advertisement on Craigslist seeking an older boyfriend.  In her posting, she described herself as 99 years old.

Rogers responded to her advertisement approximately thirty minutes later.  He wrote, "I'm not sure exactly what you're looking for, but I'm 26, on the North Side, hard body, blue eyes, and live alone.  I do like to spoil the girls I'm with but hope you act mature.  Tell me some more about you..."  Emily responded, "Hey, I'm 13 but I can't put that because I got kicked off.  So if that's too young, it's ok."  Rogers replied, "It's okay.  What do you like to do?  Do you have a pic?  Do you have aim messenger?  We can talk there, too.  Think you'd be okay with me?"

Rogers and Emily conversed for two-and-a-half months.  In many of those exchanges, Rogers explicitly questioned Emily about her sexual interests and desire to have sex with him, as well as expressly stated his desire to have sex with her.  In at least one exchange, Emily reiterated that she was thirteen years old.

On June 9, 2006, Rogers emailed Emily a picture of an erect penis protruding out of a pair of unzipped pants being held by a hand.

Emily and Rogers continued to converse until July 27, 2006.  They never met in person.

These interactions comprise the basis for Counts 1 and 2 of the Government's Second Amended Indictment.  *See infra* Part I.B.

**B.      Procedural Background**

The Government arrested Rogers. In a second superceding indictment, which the Grand Jury returned, the Government charged Rogers with (1) "knowingly persuad[ing], induc[ing], entic[ing], or coerc[ing][a minor], to engage in prostitution or any sexual activity," 18 U.S.C. § 2422(b); (2) "knowingly transfer[ring] obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempt[ing] to do so," 18 U.S.C. § 1470; (3) "knowingly receiv[ing] . . . child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer," 18 U.S.C. § 2252A(a)(2)(A); and (4) "emplo[ing], us[ing], persuad[ing], induc[ing], entic[ing], or coerc[ing] a[] minor to engage in . . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct . . . [and] know[ing] or ha[ving] reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed," 18 U.S.C. § 2251(a). The case was assigned to Judge Shadur.

Rogers filed a motion to sever Counts 1 and 2 from Counts 3 and 4–the counts regarding his exchanges with Emily from the counts pertaining to his conversations with Andrea. Judge Shadur granted his motion. The Government then petitioned Judge Shadur to admit as permissible propensity evidence, *see* FED. R. EVID. 413(d)(1), (5), Rogers' 2005 conversations with Andrea during his trial for his 2006 interactions with Emily. Judge Shadur denied the Government's motion as impermissible propensity evidence beyond the scope of Federal Rule of Evidence 413.

The Government filed an interlocutory appeal with this Court. We reversed the district court and held that Rogers' conversations with Andrea qualified as an offense of sexual assault for purposes of Federal Rule of Evidence 413. *United States v. Rogers*, 587 F.3d 816 (7th Cir. 2009). We then remanded the case for the district court to consider whether, despite the permissibility of the propensity evidence under Rule 413, introducing the evidence would cause Rogers unfair prejudice pursuant to Federal Rule of Evidence 403. *Id.* Judge Shadur having recused himself from the case, it was reassigned to Judge Kennelly.

The Government filed a motion to reconsider severance. Judge Kennelly granted the Government's motion and allowed trial to proceed on all counts. Rogers then filed a motion to dismiss the Second Amended Indictment. Judge Kennelly denied his motion, and a one-week trial commenced.

A jury convicted Rogers on Counts 2, 3, and 4. The jury found him not guilty on Count 1. Post-trial, Rogers moved to set aside the jury's verdict. The district court rejected his motions. It sentenced him to ten years for Count 2; fifteen years for Count 3; and twenty-five

years for Count 4, all to run concurrently. The district court also imposed upon Rogers supervised release for three years for Counts 2 and 3 and for life for Count 4.

Rogers first appeals his conviction on Count 2. As he did in his post-trial motions, he argues that the picture of an erect penis he emailed to Emily was not obscene, so the Government could not prosecute him on the basis of distributing it. He also challenges the district court's refusal to sever Counts 1 and 2 from Counts 3 and 4, and he contends that the district court committed reversible error when it omitted a "knowledge" element from its jury instructions on Counts 3 and 4.

## II.  Discussion

### A.     The Image At Issue in Count 2 is Obscene

We review a district court's denial of a defendant's motion for judgment as a matter of law de novo. *See E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 431 (7th Cir. 2012). When reviewing the record, we "determine whether the evidence presented, combined with all inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the [nonmoving party]." *See Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (quoting *Erikson v. Wisc. Dep't of Corr.*, 469 F.3d 600, 601 (7th Cir. 2006)). We disturb the jury's verdict only if no reasonable juror could have found in favor of the nonmoving party. *See id.*

Neither party disputes that obscenity is a category of speech that receives no First Amendment protection. *See Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 574 (2002) (citing *Roth v. United States*, 354 U.S. 476, 484-85 (1957)). Rogers argues, however, that this picture of a penis does not satisfy the legal standard for obscenity. He contends that the image he sent was anatomical, not sexual in nature and was "no more graphic than images that are immediately available at the corner news stand or any one of thousands of web sites."

The Government counters that, taken in the light most favorable to it, the image Rogers sent Emily is one of him masturbating. It maintains that sufficient evidence existed for the jury to determine that a picture of a man masturbating constitutes obscenity.

To be legally obscene, the content at issue must "depict or describe sexual conduct." *See Miller v. California*, 413 U.S. 15, 24 (1973); *see also Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2734 (2011). Provided that the content at issue is sexual conduct, the Government must also prove that the work, taken as a whole, appeals to the prurient interest in sex, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. *See Miller*, 413 U.S. at 24 (clarifying the legal standard of obscenity).

### 1.     The Image Depicts Sexual Conduct

The Government argues, taking all reasonable inferences in its favor, we must treat the image that Rogers emailed as one depicting masturbation, which constitutes sexual conduct. Strictly defined, the still shot of a hand holding an erect penis depicts self-touching, and we find no reason to upset the jury's inferences that it captures both masturbation and sexual conduct.

We note, however, that an inference of masturbation is not required to conclude that the image Rogers emailed describes sexual conduct. Rogers accompanied said image with contemporaneous chats to Emily. In those chats, he stated, "We should try to f*uck later today babe" and "I really wanna f'ck you." When Emily challenged his willingness to act on his statements that he would like to have sex with her, he responded by sending the image of the erect penis and asking her if she "like[d] it." Taken together, the image depicted sexual arousal, and the concurrent chat exchanges advanced a dialogue between Rogers and Emily describing sexual intercourse. The evidence supports a reasonable inference that the content at issue depicted or described sexual conduct. *See generally R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 427 (1992) (Stevens, J., concurring) (The meaning of any expression and the legitimacy of its regulation can only be determined in context. Whether, for example, a picture or a sentence is obscene cannot be judged in the abstract, but rather only in the context of its setting, its use, and its audience.").

Admittedly, the mixed modes of communication Rogers' used–email and instant message–might give one pause when determining the scope of the work available for the jury's consideration. That is, one might question whether the picture alone or the picture and the instant messages comprise the "content" that the jury must evaluate. We think the contemporaneous nature of Rogers' chats and emails unites them as the totality of this particular expression.[5] If Rogers' chats were dialogue in a book, and the picture he sent included on the next page, we hardly would have trouble concluding that the work in question depicted or described sexual conduct. In our view, it matters not that the content of Rogers' expression appeared in two distinct internet windows, not bound together in a book. His words contextualize the picture and tell us–and the jury–exactly what he intended to

---

[5] The fact that the chats and images were sent concurrently militates against concerns that the chats were too temporally remote to have probative value vis-a-vis the image. *Cf. United States v. Russell*, 662 F.3d 831, 847-48 (7th Cir. 2011) (acknowledging a potential problem with a piece of evidence's temporal remoteness from the facts at issue, but rejecting the proposition that temporal disjunction necessarily defeats relevance).

communicate to Emily, how the picture should be viewed and understood. In this case, the jury could reasonably conclude that the Rogers' expression depicted or described sexual conduct.

### 2.    The Image Appeals to the Prurient Interest

A prurient interest in sex is one that is "shameful or morbid." *See California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater*, 454 U.S. 90, 92 (1981);[6] *see also Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 679 (2004) (Scalia, J., dissenting) (defining "prurient interest" as "seek[ing] a sexual response from"). Whether an image appeals to a prurient interest is a question of fact for a jury to determine. *See Smith v. United States*, 431 U.S. 291, 300-01 (1977) (citing *Miller*, 413 U.S. at 30).

We, and the jury, evaluate whether the content in question appealed to a prurient interest in sex based upon contemporary community standards. *See Pope v. Illinois*, 481 U.S. 497, 500 (1987) (citing *Smith*, 431 U.S. at 291); *see also Reno v. American Civil Liberties Union*, 521 U.S. 844, 874 n.39 (1997) (quoting *Miller*, 413 U.S. at 30). We hold that a jury could reasonably find that the image in this case so appealed.

Rogers sent the image in question to a thirteen-year-old minor, whom he believed to be thirteen, in the course of discussing sex with and propositioning her. His expression, taken as a whole, lends itself to three possible interpretations: Rogers intended (1) to illicit a sexual response from Emily; (2) to communicate his sexual attraction to her; and/or (3) to compel Emily to view a picture of him masturbating.

On any of these interpretations, a jury could reasonably find prurient his sexual interest in and pursuit of a child. The jury could also find shameful his desire to expose Emily to such graphic and sexualized content. The Supreme Court's First Amendment jurisprudence emphasizes a distinction between parties who consent to privately receive and possess obscene materials and those who endure unwilling exposure. *Compare Stanley v. Georgia*, 396 U.S. 557, 568 (1969) (holding that the First and Fourteenth Amendment forbid criminalizing the private possession of obscenity), *with United States v. American Library Ass'n Inc.*, 539 U.S. 194, 200 (2003) (opinion of Rehnquist, O'Connor, Scalia, and Thomas, JJ.) (recognizing shielding the

---

[6]"Prurient interest" was statutorily defined in Section 311 of California's Penal Code, CAL. PENAL CODE § 311 (West 2008), which is not applicable in the present case. However, the Supreme Court has embraced the definition as helpful and unobjectionable, and we similarly find it instructive.

public from unwanted exposure to pornography as a government interest sufficiently compelling to uphold a law requiring public libraries to install filtering software on their computers or else lose federal funding). The Court also stresses that children, regardless of whether or not they subjectively wish to view sexually explicit or obscene materials, may be treated by the State as legally unable to consent to do so. *See, e.g., Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212-14, 214 n.10-11 (1975) (recognizing the State's "undoubted police power to protect children," its power to "adopt more stringent controls on communicative materials available to youths than on those available to adults," and its ability to suppress from minors material "obscene as to [them]"). Such is the case under 18 U.S.C. § 1470, in which Congress denied children under sixteen years of age the ability to receive obscene materials and, in turn, the ability to consent to receive such content. Rogers' attempt to foist upon Emily, an individual he believed to be a thirteen-year-old minor, sexually explicit material that she legally could not consent to receive constitutes a prurient interest. In our view, therefore, the image satisfies the first criterion for legal obscenity.

### 3.    The Image Was Patently Offensive

Whether an image is "patently offensive" is a question of fact. *See Jenkins v. Georgia*, 418 U.S. 153, 159 (1974) (citing *Miller*, 413 U.S. at 30). To make this determination, a jury evaluates the content in light of contemporary community standards. *See American Civil Liberties Union*, 535 U.S. at 576 n.7. In doing so, the jurors inevitably "draw upon personal knowledge of the community or vicinage from which [they] come[]." *Id.* at 576-77 (quoting *Hamling v. United States*, 418 U.S. 87, 105 (1974)) (internal quotation marks omitted).

Jurors, however, do not enjoy "unbridled discretion in determining what is 'patently offensive.'" *Jenkins*, 418 U.S. at 160. In *Jenkins v. Georgia*, the Supreme Court explained that the examples of "patently offensive" conduct it detailed in *Miller v. California*, 413 U.S. at 25, "intended to fix substantive constitutional limitations, deriving from the First Amendment, on the type of material subject to [a finding of patent offensiveness]." *Jenkins*, 418 U.S. at 160-61. Specifically, patently offensive behavior included "representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *Id.* (quoting *Miller*, 413 U.S. at 25) (internal quotation marks omitted).

In this case, the image of the erect penis falls within the constitutional bounds of "patently offensive" material. A jury could reasonably find that the picture represented or described a lewd exhibition of his genitals. As such, the image fulfills the second criterion for legal obscenity.

### 4.    The Image Lacked Serious Literary, Artistic, Political, or Scientific Value

When a jury assesses the social value of sexual content, a question of fact, it must determine whether "a reasonable person would find such value in the material, taken as a whole." *Pope*, 418 U.S. at 501. In this case, a jury could conclude that the image Rogers sent lacks any serious literary, artistic, political, or scientific value. Rogers did not send the image to engage Emily in scientific discussion on human anatomy or an academic discourse on teenage sexual activity. *Cf. Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 247-48 (2002) (offering examples of literary and cinematic depictions of teenage sexual activity or child abuse that have redeeming social value). He sent her the image to emphasize his desire to have sex with her and to encourage her to have sex with him. Even were the fictional Emily not a minor, a jury applying the reasonable person standard could find that the image lacked serious literary, artistic, political, or scientific value. Accordingly, we conclude that the image Rogers emailed to Emily legally constitutes obscenity, and we affirm the district court's denial of Rogers' motion for judgment as a matter of law on Count 2.

### B.    The District Court Did Not Err in Granting the Government's Motion for Reconsideration on Severance and Reversing Judge Shadur's Prior Ruling

Multiple counts may be charged in a single indictment when the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a); *see United States v. Calabrese*, 572 F.3d 362, 367 (7th Cir. 2009). However, separate trials on various counts are appropriate when a single trial "appears to prejudice the defendant or the government . . . ." FED. R. CRIM. P. 14(a); *see Calabrese*, 572 F.3d at 367-68. We review a district court's denial of a severance motion for abuse of discretion. *See Calabrese*, 572 F.3d at 367-68.[7] We reverse the district court only if the defendant shows that the denial of severance "caused him actual prejudice in that it prevented him from receiving a fair trial; it is not enough that separate trials may have provided him a better opportunity for an acquittal." *See id.* (quoting *United States v. Quilling*, 261 F.3d 707, 714 (7th Cir. 2001)) (internal quotation marks omitted).

---

[7]Neither party disputes that law of the case doctrine permitted Judge Kennelly to reconsider Judge Shadur's ruling on severance once he was assigned the case. For a discussion about law of the case doctrine in this context, see *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (2006).

Rogers argues that he suffered actual prejudice with respect to Counts 3 and 4 (his interactions with Andrea) because he was convicted on those counts based on the evidence supporting Counts 1 and 2 (his interactions with Emily). In particular, he asserts that the Government could not corroborate Andrea's testimony that he asked her to send him nude pictures with actual documentation of their conversations, so it relied on his graphic sexual conversations with Emily, which it could document, to substantiate Counts 3 and 4. He suggests that he was convicted based on the jurors' feelings about the frequency and character of his sexual chatting on the internet, not on evidence supporting charges vis-a-vis Andrea.

The Government argues, first, that Rogers waived his objection to the joinder of all of the counts against him because he did not renew it after the close of evidence during trial. Second, it argues that Rogers was not prejudiced by the joinder.

### 1. Waiver

As a general matter, a defendant waives his severance motion if he fails to renew it at the close of evidence. *See United States v. Rollins*, 301 F.3d 511, 518 (7th Cir. 2002). Failure to renew a motion to sever at the close of evidence may be excused, however, if the defendant proves that refiling the motion to sever would have been futile. *See United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009).

Rogers did not renew his motion to sever at the close of evidence. He does not address his failure to renew his motion to sever in his opening brief. In his reply brief, however, he contends that refiling his motion would have been futile because "Judge Kennelly gave defense counsel clear indications it would have been a futile exercise." He offers two examples of these indications. First, referring to an unrelated objection that he raised multiple times (whether the "knowledge" needed to be included as an element of the offense in Count 4's jury instructions), he notes that Judge Kennelly told him that he thought the objection was meritless, but should be preserved. Second, he refers us to comments the judge made while reviewing jury instructions where he states, "One of the questions I had actually is: How does one–I haven't tried one of these cases." On these examples, Rogers asks us to "infer[]" that Judge Kennelly was "unlikely to entertain any new argument on previously raised objections."

The second example Rogers offers relates inscrutably to the futility of refiling his motion to sever. It is not clear from the portion of the transcript cited, nor from that portion read in context, how the district court's familiarity with charges of this nature impacted his willingness to entertain the renewed objection.

The first example Rogers offers is slightly more compelling.  If Judge Kennelly was unwilling to entertain new arguments on any previously raised objections, then renewing the motion to sever would serve only to preserve the objection, not alter the ruling.  As renewing the motion would not change the result, refiling the motion could be construed as futile.

However, the statements Rogers emphasizes to support an inference of futility pertain only to a single objection.  Judge Kennelly did not pronounce that he would not entertain new arguments of any kind.  Moreover, even if the judge intended to communicate that he would not permit any new argument, he expressly instructed defense counsel to preserve their objections anyway.  The fact that Rogers chose not to preserve his motion to sever despite the district court's suggestion to do so supports the conclusion that he intended to waive his objection, not that waiver should be excused.  Consequently, we think that Rogers has not demonstrated that his failure to renew his motion to sever should be excused as futile.  As he has waived the objection, our appellate review is foreclosed. *See Alviar*, 573 F.3d at 538 (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)).

### 2.     Prejudice

Assuming arguendo that Rogers did not waive his motion to sever, the district court did not abuse its discretion by refusing to sever Counts 1 and 2 from Counts 3 and 4.  In particular, Rogers did not prove actual prejudice–he was not denied a fair trial on this basis.

Rogers argues that, but for the evidence of his online habits and interactions with Emily, he would not have been convicted on Counts 3 and 4.  He implies that he was convicted on the basis of improper propensity evidence:  the fact that he had engaged in sexual conversations with Emily and sent her an obscene picture was not probative of his guilt with respect to Andrea.  We disagree.

When Judge Shadur presided over this case and granted Rogers' motion to sever, he prohibited the Government from introducing in the trial on Emily any evidence regarding Andrea.  The Government filed an interlocutory appeal, and this Court ruled that Rogers' exchanges with Andrea qualified as proper propensity evidence under Federal Rule of Evidence 413. *Id.* at 820.  We remanded to the district court, however, to evaluate whether the probative value of the propensity evidence was outweighed by its prejudicial effect. *Id.* at 823.  In doing so, we offered the following guidance:

> [T]he danger of unfair prejudice comes from the risk that a jury will base its decision on improper inferences. Rule 404(b) identifies the propensity inference as improper in all circumstances, and Rule 413 makes an exception to that rule

when past sexual offenses are introduced in sexual assault cases. Congress has said that in a criminal trial for an offense of sexual assault, it is not improper to draw the inference that the defendant committed this sexual offense because he has a propensity to do so. Because Rule 413 identifies this propensity inference as proper, the chance that the jury will rely on that inference can no longer be labeled as "unfair" for purposes of the Rule 403 analysis. . . . That said, evidence of prior sexual offenses may still pose significant dangers against which the district court must diligently guard. Even if the evidence does not create unfair prejudice solely because it rests on propensity, it may still risk a decision on the basis of something like passion or bias—that is, an improper basis. Even though Congress has made the propensity inference permissible, it has not said that evidence falling within Rule 413 is per se non-prejudicial. To the contrary, a jury might use such evidence, for example, to convict a defendant because it is appalled by a prior crime the defendant committed rather than persuaded that he committed the crime charged. . . . Or a jury, uncertain of guilt, may convict a defendant because they think the defendant is a bad person generally deserving of punishment.

*Id.* at 822-23 (internal citations omitted).

When Judge Kennelly issued his judgment on the Government's motion for reconsideration and declined to sever the counts, he analyzed the relevance and prejudicial effect of Rogers' interactions with both Andrea and Emily. He found the conduct with respect to Emily relevant to Counts 3 and 4 because it "show[ed] [Rogers'] motive to communicate with a minor girl in a sexually oriented way because it provided evidence that he is sexually interested in underage girls." He found that the communications "show[ed] absence of mistake . . . in communicating with minors." Finally, he found the evidence "arguably . . . relevant to show his intent to induce an underage girl to produce a sexually explicit image of herself . . . ."

Turning to the risk of unfair prejudice under Federal Rule of Evidence 403, the judge stated:

I do think there is some risk of the sort of unfair prejudice that the Seventh Circuit described in [*Rogers*, 587 F.3d at 822-23], but I don't think that it substantially outweighs the probative value of the evidence. The probative value of the evidence in my view is considerable, and under Rule 403, unfair prejudice has to substantially outweigh it. The defendant has not yet been

found to have committed the conduct that is charged in either the 2005 or 2006 incidents, and he will have a chance to defend himself before a jury and argue that the government hasn't and can't prove each and every element of his commission of those offenses. So in part, because both of those episodes are still pending charges that haven't been adjudicated in part because they took place close in time to each other, I don't think that the risk of the sort of unfair prejudice that the Seventh Circuit described substantially outweighs the probative value of the evidence.

Judge Kennelly appropriately balanced the probative value of Rogers' interactions with Emily against the evidence's risk of unfair prejudice. He did not abuse his discretion in refusing to sever the counts for purposes of trial.

Moreover, Rogers has not proven that the jury convicted him because they were appalled by his exchanges with Emily or because they thought he was a bad person–the prejudice that we condemned when the case was first before us. *See Rogers*, 587 F.3d at 822-23. He suggests that he was improperly convicted on Counts 3 and 4 by underscoring that the Government did not produce any of the emails in which Andrea told Rogers her age or in which he requested nude pictures of her. Evidence as to his guilt on Counts 3 and 4 was so lacking that, he implies, the jury could not have found him guilty on these counts unless it was outraged by his demonstrable conduct with Emily and convicted him as punishment.

His analysis, however, ignores the facts that the Government produced emails documenting an internet relationship between Rogers and Andrea and that Andrea testified at trial. The district court admitted into evidence Government exhibits entitled "Andrea 1-17." Those exhibits were emails between Rogers and Andrea, concretely establishing that the two were in contact online. Andrea testified as to the content of those emails, as well as to the content of her conversations with Rogers over instant message. She told the jury that she had informed Rogers that she was fourteen years old. She also told the jury that Rogers had expressly requested she send pictures of herself, including nude ones.[8] While physical documentation that Rogers knew Andrea's age or that he specifically requested nude pictures of her would have made her testimony all the more incriminating, a reasonable jury could have been persuaded of his guilt by her testimony. Perhaps his conversations and email exchanges with Emily buttressed Andrea's account, but, under Federal Rule of Evidence 413, the jury was

---

[8] *But see supra* Part I.A (noting the contradictory nature of this testimony as represented in the parties' briefs).

allowed adopt that propensity inference, and it does not amount to unfair, actual prejudice. Consequently, we affirm the district court's denial of the motion to sever.

**C.    The District Court Did Not Err in Excluding a "Knowledge" Element From Its Jury Instructions on Counts 4, But Did Err in Omitting This Element From Count 3**

We review a district court's jury instructions de novo to determine if they were correct and complete statements of law. *See United States v. Li Xin Wu*, No. 11–2055, 2011 WL 6835000, at *1 (7th Cir. Dec. 28, 2011) (citing *United States v. Tanner*, 628 F.3d 890, 904 (7th Cir. 2010)). If the instructions were accurate as given, "we will defer to the district court's choice of language and not disturb them." *Id.* (citing *United States v. Ashqar*, 582 F.3d 819, 822 (7th Cir. 2009)).

The Court delivered the following jury instructions regarding Count 3 and Count 4:

Count 3 of the indictment charges the defendant with receiving child pornography. In order for you to find the defendant guilty of this charge, the government must prove each of the three following things beyond a reasonable doubt:

Number 1. The defendant knowingly received the material identified in the indictment.

Number 2. The material identified in the indictment is child pornography.

Number 3. The material identified in the indictment was shipped or transported in interstate or foreign commerce.

And I will define certain of these terms in a moment. If you have a reasonable doubt about any of these three things, then you should find the defendant not guilty of this charge. If the government has proven each of these things beyond a reasonable doubt, then you should find the defendant guilty of this charge....

Count 4 of the indictment charges the defendant with persuading, inducing and enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. In order for you to find the

defendant guilty of this charge, the government must prove each of the three following things beyond a reasonable doubt:

Number 1. The defendant employed, used, persuaded or coerced another person to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. I will define the term "sexually explicit conduct" in a moment.

Number 2. At the time the other person was under the age of 18 years.

Number 3. It's either A or B. A is the defendant knew or had reason to know that such visual depiction would be mailed or transported across state lines or in foreign commerce or; B, the visual depiction was mailed or actually transported across state lines, or in foreign commerce.

If you have a reasonable doubt about any of these things, then you should find the defendant not guilty of this charge. If the government has proved each of these things beyond a reasonable doubt, then you should find the defendant guilty of this charge.

And the definition of "sexually explicit conduct" for Count 4 is that it means masturbation or lascivious exhibition of the genitals or pubic area of a person. And exhibition of the genitals or pubic area of a person is lascivious if it has a tendency to arouse sexual desire.

Rogers challenges that the jury instructions for Counts 3 and 4 are not correct and complete statements of law because they do not contain a "knowledge" instruction regarding the minority status of the children involved. Count 3, he argues, alleges that he "knowingly received an image of child pornography." *See supra* Part I.B. Similarly, he continues, Count 4 charges that he "employed, used, persuaded and enticed a minor under the age of eighteen . . . to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct . . . , which visual depiction defendant knew or had reason to know would be transported in interstate commerce." *See supra* Part I.B. Therefore, he maintains, his conviction on these counts requires the Government to prove that he knew that the individual depicted in the image he received or whom he enticed to produce a visual depiction of sexual conduct was a minor.

To support his argument, he directs us to the Supreme Court's ruling in *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994). In *X-Citement*, the Supreme Court, examining 18 U.S.C. § 2252, concluded that the term "knowingly" modified not only the verbs immediately following the word, but also the elements of minority of the performers. *Id.* The Court reasoned that an alternative reading of the statute would punish individuals that intentionally mailed or shipped a package without regard to their knowledge of the contents contained within it. *Id.* at 69-70. Moreover, the Court explained, "a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts." *Id.* at 78. In Rogers' view, the Court's *X-Citement* holding controls in his case and applies to 18 U.S.C. §§ 2251(a) and 2252A(a)(2)(A) as well.

### 1.    Count 4

The Government, with respect to Count 4, 18 U.S.C. § 2251(a), offers ample case law from this Circuit and others rejecting knowledge of the child's minor status as an element of the offense. Moreover, the Government correctly notes, Rogers' reliance on the Supreme Court's *X-Citement* decision is misplaced because, in that case, the Court distinguished Section 2251(a)–at issue in this case–from Section 2252–at issue in *X-Citement*. *See X-Citement*, 513 U.S. at 77 n.5, n.6. Albeit in a footnote, the Court recognized a "difference in congressional intent with respect to § 2251 versus § 2252." *Id.* at 77 n.5. It concluded that, for purposes of Section 2251, producers of sexually explicit content bear the risk of mistaking their performers' ages and may be convicted without actual knowledge of age. *Id.* Accordingly, Rogers need not have known that Andrea was a minor to be convicted on Count 4, and we conclude that the district court's omission of a "knowledge" requirement on Count 4 did not misconstrue the law. *See United States v. Fletcher*, 634 F.3d 395, 400-01 (7th Cir. 2011).

### 2.    Count 3

With respect to Count 3, 18 U.S.C. § 2252A(a)(2)(A), the Government argues both that Rogers waived his objection to the absence of a "knowledge" element and that, in any event, the absence of the instruction did not prejudice him. The Government does, however, concede error–the district court should have provided a "knowledge" instruction on Count 3.

The Government notes the Rogers challenged the absence of a "knowledge" element only for Count 4. When discussing jury instructions, the district court asked if Rogers wished to "preserve the objection on the knowledge of under 18 on the 2251 count." Defense counsel stated that it did wish to preserve the objection, but made no reference to Count 3 or Section

2252A. When the district court asked if there were "any other issues anybody want[ed] to raise on instructions," Rogers' defense counsel did not comment.

To preserve an objection to a proposed jury instruction, "a party must object to the instructions, stating distinctly the matter to which the party objects and the grounds of the objection." *United States v. Persfull*, 660 F.3d 286, 298 (7th Cir. 2011) (quoting *United States v. O'Neill*, 116 F.3d 245, 247 (7th Cir. 1997)) (internal quotation marks omitted). Rogers did not raise such an objection on the jury instructions for Count 3. Nevertheless, the record does not support the conclusion that this omission was a wilful and deliberate relinquishment of his objections. Accordingly, we view his argument as forfeited and review for plain error. *Id.*; *see also United States v. Turner*, 651 F.3d 743, 747 (7th Cir. 2011) (distinguishing between "wavier" and "forfeiture" and the corresponding standards of review).

Under plain error review, we must determine "(1) that error occurred; (2) that the error was plain; and (3) that the error affected the defendant's substantial rights." *See United States v. Brown*, 662 F.3d 457, 461 (7th Cir. 2011) (quoting *United States v. Luepke*, 495 F.3d 443, 448 (7th Cir. 2007)). If these criteria are met, we may reverse.

### i.    Plain Error

An error is "plain" if it is "clear" or "obvious." *Id.* (quoting *Olano*, 507 U.S. at 734). In this case, the Government concedes clear error, noting that the omission of a "knowledge" element from Count 3 is at odds with this Circuit's case law applying the Supreme Court's holding in *X-Citement*, 513 U.S. at 64. The Government rightly does so. As we previously discussed, the Court, in *X-Citement*, held that the term "knowingly" in Section 2252 extended to both the sexually explicit nature of the material and the age of the performers. *Id.* at 78. The opinion does not comment on Section 2252A, which is distinct from Section 2252.

In *United States v. Malik*, however, we held that Section 2252 and Section 2252A "are materially identical" such that "knowingly" should be construed for Section 2252A it was is for Section 2252–meaning that to convict an individual for receiving child pornography, the Government must prove that the defendant knew the age of the performer. 385 F.3d 758, 760 (7th Cir. 2004). *Malik*, thus, clarified that there exists a "knowledge" requirement vis-a-vis receipt under Section 2252A(a)(2)(A), the crime with which Rogers is charged.[9] *See also United*

---

[9]In *United States v. Peel*, 595 F.3d 763 (7th Cir. 2010), we dispensed with any remaining distinction between the knowledge of the performer's age required for the *possession* of child

(continued...)

*States v. Halliday*, No. 10–2337, 2012 WL 447450, at *5 (7th Cir. Feb. 14, 2012). The district court erred by omitting such an instruction when it delivered its jury instructions on Count 3.

### ii.   Rogers' Substantial Rights

This error affected Rogers' substantial rights. We note, as an initial matter, that a jury instruction that omits an element of the offense does not amount to structural error. *See Neder v. United States*, 527 U.S. 1, 9-15 (1999) ("Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.") (emphasis in original). The omission of an element is, rather, subject to harmless-error analysis. *Id.* at 15. The test "is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 15-16 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)) (internal quotation marks omitted). The standard remains the same upon plain error review. Because he forfeited his challenge to the jury instructions on Count 3, Rogers bears the burden of proving that his substantial rights were impacted, which, generally, requires that he prove that he was prejudiced. *See Brown*, 662 F.3d at 461 ("[T]he error must have affected the outcome of the district court proceedings." (quoting *Olano*, 507 U.S. at 734) (internal quotation marks omitted)).

The instructions provided to a jury, and omissions from those instructions, affect that body's deliberative process in ways that are "are not readily calculable." *Neder*, 527 U.S. at 18. When the instructional error is a misstatement or omission of an element of the offense, we may conclude that the jury's verdict would have been the same absent the error when the omitted element "is supported by uncontroverted evidence." *Id*. ("[W]here a defendant did not, and apparently could not, bring forth facts contesting the omitted element . . . the error does not fundamentally undermine the purposes of the jury trial guarantee.").

That confidence does not exist in this case. To convict Rogers on Count 3, the jury had to find, beyond a reasonable doubt, that Rogers' knew that Andrea was a minor. Certainly, the Government offered the jury evidence–by way of Andrea's testimony–that Rogers knew Andrea was a minor when he asked her to send him nude pictures of her breasts and genitals.

---

[9](...continued)
pornography under Section 2252A(a)(5)(B) and the receipt of child pornography at issue in *Malik,* 385 F.3d 758, 759-60. The Government must prove that the defendant knew the minor status of the performer for either charge. *See also Halliday*, 2012 WL 447450, at *5.

That fact, however, was not incontrovertible or uncontested. Rogers' defense counsel raised this issue during Andrea's cross-examination. She asked, "[I]n the emails that we've reviewed here today you did not discuss how old you were with the person that you were emailing . . . did you?" Andrea answered, "In the emails, no." Defense counsel reiterated this argument to the jury during closing, telling the jury that "[i]n not one of those [seventeen] emails [between Andrea and Rogers] does Andrea say, 'I'm 14.'" What Roger knew about Andrea's age remained disputed by the parties throughout the entirety of the trial, and we cannot conclude that the jury's verdict would have been the same had it been expressly instructed that the Government had to prove Rogers' knowledge of Andrea's age. *See id.* at 19 "(If . . . the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error–for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding–it should not find the error harmless."). The error, therefore, adversely affected Rogers' substantial rights.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court and Rogers' convictions on Counts 2 and 4. We REVERSE with respect to Count 3.