# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40359

United States Court of Appeals
Fifth Circuit

**FILED**
May 10, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SPENCER SALCEDO,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.

PER CURIAM:

A jury convicted Spencer Salcedo on two counts of using a means of interstate commerce to knowingly attempt to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity and two counts of using a means of interstate commerce to knowingly attempt to transfer obscene matter to a minor under the age of 16. Salcedo appeals his conviction on the counts involving transfer of obscene material in violation of 18 U.S.C. § 1470, arguing both that the image at issue was not obscene and that he did not intend to transfer the image to any minor under the age of 16. We affirm.

No. 18-40359

## I

This case arises from an undercover sting operation conducted by a partnership between the Corpus Christi Police Department's Internet Crimes Against Children Unit and the United States Department of Homeland Security. The goal was to locate individuals with sexual interest in minors and prevent them from contacting actual children. As part of the operation, undercover Corpus Christi Police Officer Alicia Escobar posted an advertisement on Craigslist that conveyed, in coded language, that Escobar wanted to recruit someone to teach her (fictitious) daughters how to have sex.

Salcedo contacted Escobar using Craigslist's email system. The two then exchanged a series of text messages. Over the course of the conversation, Salcedo confirmed that he was "into YOUNGER," implying that he was sexually interested in children, and requested a "pic" of Escobar's daughters, who she told him were 11 and 14 years old. Escobar sent him a photograph of the "daughters," who were actually two youthful-looking police officers with their faces partially cropped out of the photograph. Escobar asked Salcedo for his age and information about the size of his penis, which Salcedo provided. Immediately after, Salcedo asked "But do they [know] what's going on[?]" Escobar said "Oh ya they wanna learn . . . . what can you teach them and is tomorrow ok?" She then said "So I can get them ready. . . . Can I see a pic?"

Salcedo responded with a photograph of a man prominently displaying his erect penis, which occupied the foreground of the image. Impliedly, it was a photo of himself, but Salcedo had in fact downloaded the image from the internet. He also texted, "I can teach them real good." Escobar asked, "Can I show the girls?" and Salcedo agreed. Later in their exchange of text messages, Escobar told Salcedo she had showed her daughters the picture and they were excited, and he responded, "Oh really thats [sic] awesome.[ ] Now I'm excited." After Salcedo and Escobar made plans to meet the next morning, Salcedo asked

2

No. 18-40359

her what the daughters said about the picture, and she described the reactions of the fictitious children.

The next day, Salcedo was arrested without incident in his car at the motel where he and Escobar had arranged to meet. He was charged in a superseding indictment with two counts of using a means of interstate commerce to knowingly attempt to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b), and two counts of using a means of interstate commerce to knowingly attempt to transfer obscene material to a minor under age 16, in violation of 18 U.S.C. § 1470.[1] The government filed a voluntary bill of particulars in exchange for Salcedo's promise to withdraw his motion to dismiss the superseding indictment, specifying that "[r]egarding Count Three and Four of the Indictment, the obscene matter referred to is an image of an erect penis."

After a two-day jury trial, Salcedo moved for judgment of acquittal on the obscenity counts under Federal Rule of Criminal Procedure 29, arguing that "the Government did not prove that . . . the picture of the penis was obscene material [or that Salcedo] . . . attempted to transfer any type of obscene material to any minor." The district court denied the motion, Salcedo rested his case, and the jury found Salcedo guilty on all four counts. The district court granted Salcedo a downward variance from the Guidelines range, sentencing him to concurrent terms of 168 months in prison and five years of supervised release, for the first and second counts, and 60 months in prison and three years of supervised release, for the third and fourth counts, with a $100 special

---

[1] 18 U.S.C. § 1470 provides that "[w]hoever, using the mail or any facility or means of interstate or foreign commerce, knowingly transfers obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempts to do so, shall be fined under this title, imprisoned not more than 10 years, or both."

No. 18-40359

assessment per count. Salcedo appeals the denial of his motion for judgment of acquittal on the obscenity counts.

## II

Although we review the denial of a motion for judgment of acquittal de novo, we are "highly deferential to the verdict."[2] We "will affirm if a reasonable trier of fact could conclude the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict."[3]

These well-settled principles differ in the context of obscenity. "While the definition of obscenity is a legal conclusion, whether a work qualifies as obscenity *vel non* as applied to the facts of a particular case is a question of fact."[4] Because of the First Amendment implications of obscenity laws, however, we must exercise "independent constitutional judgment as to the obscenity of the materials in question."[5]

Our caselaw does not settle what this "independent constitutional judgment" entails. At a minimum, "an appellate court could refuse to uphold a fact-finder's determination of obscenity where it would be 'wholly at odds' with *Miller*—e.g., where a jury based an obscenity conviction 'upon a defendant's

---

[2] *United States v. McCall*, 553 F.3d 821, 830 (5th Cir. 2008) (quoting *United States v. Gulley*, 526 F.3d 809, 816 (5th Cir. 2008) (per curiam)).

[3] *Id.* (quoting *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007)).

[4] *United States v. Ragsdale*, 426 F.3d 765, 782 (5th Cir. 2005).

[5] *Id.* at 779; *see also Bose Corp. v. Consumers Union*, 466 U.S. 485, 506 (1984) ("[A]lthough under *Miller v. California*, the questions of what appeals to 'prurient interest' and what is 'patently offensive' under the community standard obscenity test are 'essentially questions of fact,' [*Miller*] expressly recognized the 'ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary.'" (quoting *Miller v. California*, 413 U.S. 15, 25, 30 (1973))); *Jenkins v. Georgia*, 418 U.S. 153, 160 (1974) ("[I]t would be a serious misreading of Miller to conclude that juries have unbridled discretion in determining what is 'patently offensive.'").

depiction of a woman with a bare midriff.'"[6] Albeit in unpublished decisions, we have repeatedly affirmed obscenity-related convictions because a reasonable juror applying contemporary community standards *could* determine that the material at issue satisfied *Miller*'s second prong.[7] But Salcedo urges us to conduct something closer to a de novo review of whether the photograph at issue was obscene, arguing that sufficiency-of-the-evidence review does not comport with our responsibility to independently safeguard the First Amendment's protections. We need not fully resolve what degree of scrutiny is appropriate. Instead, as we will explain, even a de novo review of the photograph establishes its obscenity under section 1470.

## III

A conviction under 18 U.S.C. § 1470 requires proof that the defendant knowingly attempted to transfer obscene material to a minor under the age of 16 through the mail or any means of interstate or foreign commerce.[8] Section 1470 allows for conviction even where the minor was fictitious, as in this law enforcement operation, so long as the defendant attempted to engage in conduct that otherwise would have been prohibited if the minor were real.[9]

## A

Salcedo first challenges the jury's determination that the image he sent Escobar was obscene. *Miller v. California* established a three-part test for

---

[6] *United States v. Guthrie*, 720 F. App'x 199, 202 (5th Cir. 2018) (per curiam) (quoting *Jenkins*, 418 U.S. at 161).

[7] *See id.* at 203 ("[A]a reasonable fact-finder applying contemporary community standards could determine that the videos transmitted . . . were 'patently offensive representations' of masturbation or 'lewd exhibition of the genitals.'" (alteration omitted)); *United States v. Kirkpatrick*, 662 F. App'x 237, 240 (5th Cir. 2016) (per curiam) ("[W]e conclude that a rational trier of fact could have found that the videos depicted 'sexual conduct' in a 'patently offensive way' within the meaning of the *Miller* obscenity test.").

[8] 18 U.S.C. § 1470.

[9] *See United States v. Rudzavice*, 586 F.3d 310, 313–14 (5th Cir. 2009).

whether material is obscene and therefore unprotected by the First Amendment:

> (a) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest;
> (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and
> (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.[10]

Because 18 U.S.C. § 1470 does not further define obscenity, we look to *Miller*'s three-pronged definition to determine whether Salcedo attempted to transfer obscene material to a minor under the age of 16.[11] Salcedo solely contests the sufficiency of the evidence to support the second prong—that the photograph depicted, "in a patently offensive way, sexual conduct specifically defined by the applicable . . . law." The Supreme Court has since clarified that "[a]lthough the phrase 'contemporary community standards' appears only in the 'prurient interest' prong of the *Miller* test, . . . the 'patently offensive' prong of the test is also a question of fact to be decided by a jury applying contemporary community standards."[12] "Community standards" are assessed in terms of what is obscene to the average *adult* in a given community, not the average minor.[13]

Further, where, as here, the relevant statute does not further define obscenity, we look under the second prong to whether the allegedly obscene material falls within "patently offensive representations or descriptions of that

---

[10] 413 U.S. 15, 24 (1973) (internal quotation marks and citations omitted).

[11] *See Rudzavice*, 586 F.3d at 315; *accord Kirkpatrick*, 662 F. App'x at 238.

[12] *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 576 n.7 (2002) (citation omitted).

[13] *See Pinkus v. United States*, 436 U.S. 293, 297 (1978).

specific 'hard-core' sexual conduct given as examples in *Miller*."[14] *Miller* singled out "[p]atently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated" and "[p]atently offensive representations or depictions of masturbation, excretory functions, and lewd exhibitions of the genitals."[15] The government argues that the image Salcedo sent Escobar was, at a minimum, a patently offensive lewd exhibition of the genitals. We agree.

The parties disagree on what material we may consider in assessing the image's obscenity. The government urges us to consider the photograph "taken together" or "in conjunction" with the text messages that Salcedo concurrently sent Escobar. Salcedo counters that because the government limited itself in its voluntary bill of particulars to proving obscenity in "an image of an erect penis," we may only consider whether the photograph itself is patently offensive without looking to additional context from Salcedo's text-message conversation with Escobar. Our caselaw is not wholly clear as to whether a jury is permitted to consider context from *outside* allegedly obscene material in assessing whether the material itself meets the "patently offensive" prong.[16]

---

[14] *See United States v. Thevis*, 484 F.2d 1149, 1155 (5th Cir. 1973) (citing *United States v. 12 200-Ft. Reels of Super 8mm. Film*, 413 U.S. 123, 130 n.7 (1973)).

[15] *Miller*, 413 U.S. at 25.

[16] *See Kirkpatrick*, 662 F. App'x at 240 (considering the "explicit chats" sent with allegedly obscene videos in considering whether the videos appealed to the prurient interest, then solely analyzing whether the *videos* were patently offensive without reference to the explicit messages); *cf. Penthouse Int'l, Ltd. v. McAuliffe*, 610 F.2d 1353, 1363–67 (5th Cir. 1980) (considering the first and third *Miller* prongs in relation to a work as a whole, but appearing to analyze the "patently offensive" prong in the context of specific portions of allegedly obscene works).

The government cites *United States v. Rogers*, an unpublished Seventh Circuit case, for the proposition that "[w]hether . . . a picture or a sentence is obscene cannot be judged in the abstract, but rather only in the context of its setting, its use, and its audience." *See United States v. Rogers*, 474 F. App'x 463, 468 (7th Cir. 2012) (per curiam) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 427 (1992) (Stevens, J., concurring)). Putting aside *Rogers*'s persuasive force as a non-precedential, out-of-circuit opinion citing a Supreme Court concurrence in a different context that did not itself establish governing law, it is nevertheless

We conclude that even devoid of the context provided through the text messages, the photograph was a patently offensive, lewd exhibition of the genitals that meets *Miller*'s second prong. Although *Miller* and its progeny do not define "lewd exhibition of the genitals," we agree with the Third Circuit that such an exhibition involves "showing, evincing, or showing off," in a manner "sexually unchaste or licentious," "suggestive of or tending to moral looseness," or "[inciting] to sensual desire or imagination."[17]

The Supreme Court has observed that "nudity alone is not enough to make material legally obscene."[18] Salcedo attempts to extract from this a principle that even where a representation of an erect penis is the focal point of an image, the image categorically cannot be obscene unless it has other features rendering it patently offensive. To be sure, we have often affirmed findings of obscenity based on representations of male genitalia coupled with other sexual acts.[19] We find no support in our caselaw, though, for a categorical rule that some other depiction of sexual activity is *required* to transform an image from "nudity alone" into a patently offensive, lewd exhibition of the genitals. In fact, we previously characterized an image of an erect penis as an "obscene picture" without further discussion.[20] This is not to say, of course, that every such image is necessarily patently offensive under *Miller*'s second

---

clear that *Rogers*'s commentary on the importance of "context" does not extend to our inquiry here. While *Rogers* looked to concurrent text messages alongside an allegedly obscene image to conclude that the image depicted sexual conduct, *see id.* at 468, it looked solely to the image itself to determine whether it was patently offensive, *see id.* at 470.

[17] *See United States v. Various Articles of Merchandise, Sched. No. 287*, 230 F.3d 649, 657 (3d Cir. 2000) (quoting *Webster's Third New International Dictionary* (1961)).

[18] *Jenkins*, 418 U.S. at 161; *see Penthouse Int'l*, 610 F.2d at 1365.

[19] *See Guthrie*, 720 F. App'x at 200–03; *Kirkpatrick*, 662 F. App'x at 240; *Ragsdale*, 426 F.3d at 774.

[20] *See United States v. Hughes*, 618 F. App'x 770, 773 (5th Cir. 2015) (per curiam). *Hughes* addressed this issue only in passing, and, as an unpublished decision, is not binding on our panel. We reference it only to demonstrate the absence of a stringent rule of the sort Salcedo proposes.

prong—but no bright-line principle establishes that without more, an image of erect male genitalia can never constitute a patently offensive, lewd exhibition of the genitals.

Looking solely to the photograph itself, and exercising our independent constitutional judgment, we are convinced that the photograph Salcedo sent Escobar was a patently offensive, lewd exhibition of the genitals.[21] As this is the only portion of the *Miller* test Salcedo challenges, we conclude that the material was obscene, as required for his conviction under 18 U.S.C. § 1470.

## B

Salcedo also challenges the sufficiency of the evidence to support finding that he intended to transfer the image to any minor under the age of 16, as 18 U.S.C. § 1470 also requires. As we have explained, Salcedo sent Escobar the image over the course of a text-message conversation. When Salcedo asked Escobar "But do [the daughters know] what's going on[?]," Escobar responded with a series of text messages stating "Oh ya they wanna learn . . . . what can you teach them and is tomorrow ok? So I can get them ready . . . . Can I see a pic?" Salcedo then sent the image, accompanied by a text message stating, "I can teach them real good." Salcedo does not argue that he was entrapped by Escobar's request for a "pic"; rather, he solely contests the sufficiency to support the jury's finding that he intended to transfer the image to the

---

[21] Salcedo suggests that because the relevant inquiry is whether the image would be patently offensive in the eyes of Corpus Christi's community, we should give significant weight in our independent constitutional analysis to Officer Escobar's testimony that an image of an erect penis may not necessarily be obscene to an adult in the relevant community. We do not take Escobar to have testified that she did not find this particular image obscene. In any event, if we are to give weight to contemporary community standards in conducting our independent constitutional judgment, this suggests that we should also account for the *jury's* determination that the photograph was obscene. To the extent that we incorporate contemporary community standards into our analysis, then, we are further convinced that the evidence was sufficient to conclude that the photograph was obscene by the contemporary standards of a member of the Corpus Christi community.

No. 18-40359

daughters. Here, we are bound by the typical standard of review for a challenge to the sufficiency of the evidence: Salcedo must show that no reasonable jury could conclude that he had intended to transfer the image to minors below the age of 16.[22]

Although Salcedo concedes that the use of an adult intermediary does not sever a defendant's intent to transfer an image to minors under section 1470, he argues that the evidence only supports that he intended to transfer the image to Escobar, not to the two fictitious children.[23] He argues that he sent the image *to Escobar* in response to her request for a "pic," and that he only later agreed to her request for permission to show the image to her daughters. He submits that the only way for a reasonable jury to read the texting exchange between himself and Escobar is that she was "interviewing" him for her "sex-tutor" request, she asked if *she* could have a picture, and he sent it to her to convince her that he was suitable, accompanied by the words "I can teach them real good."[24] He also suggests that the fact that Escobar then asked if she could "show the girls" indicates that at the time, she did not understand him to have sent it to her as an intermediary to transfer it to the minors.

---

[22] *See, e.g.*, *United States v. Evans*, 892 F.3d 692, 702 (5th Cir. 2018).

[23] Salcedo also argues that for him to have intended to "transfer" the image to the two minors under section 1470, he must have intended to convey "possession and control" over the image to the minors. He relies heavily on our decision in *Sealed Appellee 1 v. Sealed Appellant 1*, 767 F.3d 418 (5th Cir. 2013), which interpreted "transfer" as used in 18 U.S.C. § 4245. It is unclear why the meaning of "transfer" in section 4245—which allows the government to hold a commitment hearing on a prisoner's mental condition when the prisoner has objected to being "transferred to a suitable facility for care or treatment"— should apply with equal force in the context of section 1470. Further, even *Sealed Appellee 1* rejected the notion that a "transfer" is "restricted in meaning to only physical conveyances or a change in physical location." *See id.* at 422. We therefore decline Salcedo's invitation to consider a definition of "transfer" that is limited purely to possession and control.

[24] Salcedo also notes that when he was questioned after his arrest, he was asked whether he told "the mom" to show the picture to the daughters, and he said that the mother was the one who asked whether she could show it to them.

No. 18-40359

We disagree. The evidence was sufficient for a reasonable jury to conclude that when Escobar asked Salcedo "So I can get them ready . . . . Can I see a pic?," Salcedo interpreted it as an invitation for him to provide a picture of his genitals to "groom" the daughters for their sexual encounter, and sent Escobar the picture with the intent that she serve as an intermediary to transfer it to the minors. The same evidence may support other, less incriminating conclusions—but we may not override the jury's sound judgment based solely on the fact that there are alternate interpretations.[25] In sum, Salcedo has not shown insufficient evidence to support the jury's determination that he was guilty under 18 U.S.C. § 1470 of attempting to transfer obscene material to minors under the age of 16.

## IV

We affirm Salcedo's conviction.

---

[25] *See United States v. Fulton*, 914 F.3d 390, 400 (5th Cir. 2019) (explaining that we ask "only whether the jury's decision was rational, not whether it was correct" (quoting *United States v. Lewis*, 774 F.3d 837, 841 (5th Cir. 2014)).