IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 6, 2013

No. 12-10153

Lyle W. Cayce
Clerk

SEALED APPELLEE 1,

Petitioner–Appellee,

v.

SEALED APPELLANT 1,

Respondent–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before DeMOSS, OWEN, and HAYNES, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Appellant, a federal prisoner, challenges her commitment to a mental-health treatment facility within the federal prison system pursuant to 18 U.S.C. § 4245. We affirm.

**I**

The Government sought and obtained an order committing Appellant to a mental-health unit in Federal Medical Center Carswell (Carswell). Carswell is a multi-unit medical and mental-health facility and is the only all-female medical facility operated by the Bureau of Prisons (BOP). In addition to general-population and maximum-security units, Carswell operates a hospital facility containing multiple medical and psychiatric units. The hospital includes three

mental-health units designated M1, M2, and M3. M1 is an inpatient unit, where patients are permitted to leave their rooms and interact with other inmates in common areas. M3 is an observation unit, where inmates are locked inside cells (alone or with a few other inmates) twenty-four hours a day except for brief periods for activities such as recreation or showering. M3 is used to house inmates with disciplinary problems or who are in danger of harming themselves.

Appellant has been an inmate at Carswell since 2005.[1] The BOP originally placed her in the general-population unit, but transferred her to the mental-health unit in May of 2009 as her mental state deteriorated and she became aggressive towards other inmates. Appellant consented to the transfer. She was initially housed in the M3 unit but subsequently moved to the M1 unit and has resided in one or the other since her transfer. Because of the security and access controls in the M3 unit, medical and psychiatric treatment of inmates is more difficult.

Although she did not object to being housed in the mental-health unit of Carswell, Appellant has refused the psychiatric treatment deemed necessary by the staff. Dr. Judith Cherry (Dr. Cherry), the chief psychiatrist at Carswell, diagnosed Appellant with multiple mental disorders that cause her to become aggressive and belligerent when untreated. According to Dr. Cherry, Appellant suffers from schizoaffective disorder and antisocial personality disorder, conditions she characterized as "[c]hronic [m]ental [i]llness." Dr. Cherry also described Appellant as "grossly psychotic" and "not able to tend to her hygiene at all." As a result of her untreated mental illness, Appellant also refused

---

[1] Appellant was incarcerated pursuant to a manslaughter conviction for setting a fire that killed her aunt.

treatment for other medical conditions, putting her physical health at risk as well. Her treating physician, Dr. Beth Serrano-Powers, testified that Appellant had experienced a heart attack and that she suffered from coronary artery disease, diabetes, hypertension, obesity, and hyperlipidemia (high cholesterol). Dr. Serrano-Powers further testified that Appellant was not compliant with her medical treatment plan and that her prognosis was poor without that treatment.

Because Appellant refused psychiatric treatment in writing, the Government requested a hearing to determine her mental condition pursuant to 18 U.S.C § 4245.[2] Following a hearing, a magistrate judge found that Appellant was "presently suffering from a mental disease or defect for the treatment of which she is in need of custody for care or treatment in a suitable facility" and recommended that Appellant be committed. After considering the record and objections, the district court adopted the magistrate's findings and conclusions and ordered that Appellant be committed. Appellant timely filed this appeal.

## II

Appellant first argues that a commitment proceeding under § 4245 is improper for an inmate who already resides voluntarily in the facility to which the Government seeks commitment. She asserts that the Government may seek a commitment hearing only when a prisoner has objected in writing specifically

---

[2] Appellant appears to dispute that she objected in writing to treatment other than antipsychotic medication. Dr. Cherry's testimony at the hearing on this topic is ambiguous. When asked about Appellant's refusal to take medication, Dr. Cherry identified "treatment refusal forms [used] when an inmate refuses necessary medical or psychiatric treatment" that were signed by Appellant. However, the district court adopted the magistrate's finding that "[Appellant] has refused in writing and continues to refuse psychiatric medications *or treatments*." Appellant does not challenge this finding.

to a *physical* transfer. She also argues that the proceeding under § 4245 is either moot or unripe for the same reason. Our reading of the statute does not support such a restrictive interpretation, nor are we persuaded by Appellant's assertion that the Government is attempting to use § 4245 impermissibly to bypass federal regulations governing forced medication.

Whether a commitment proceeding is authorized in these circumstances is a question of statutory construction and therefore a matter of law that we review de novo.[3] In construing a statute, we focus on its plain language in context with its "design, object and policy."[4] A statute must be read as a whole, and individual terms or phrases should not be interpreted in isolation.[5] "When the plain language of a statute is unambiguous and does not 'lead[] to an absurd result,' 'our inquiry begins and ends with the plain meaning of that language.'"[6]

Section 4245 permits the Government to file a motion in the district court requesting "a hearing on the present mental condition" of a prisoner when that

---

[3] *United States v. Bonin*, 541 F.3d 399, 400 (5th Cir. 2008) (per curiam) (citing *United States v. Phipps*, 319 F.3d 177, 183 (5th Cir. 2003)).

[4] *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 448 (5th Cir. 1995) (citing *Crandon v. United States*, 494 U.S. 152, 158 (1990)).

[5] *Garcia–Carias v. Holder*, 697 F.3d 257, 263 (5th Cir. 2012); *see also Deal v. United States*, 508 U.S. 129, 132 (1993) (recognizing the "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used").

[6] *United States v. Dison*, 573 F.3d 204, 207 (5th Cir. 2009) (alteration in original) (footnote omitted) (quoting *United States v. Rabanal*, 508 F.3d 741, 743 (5th Cir. 2007), and *United States v. Crittenden*, 372 F.3d 706, 708 (5th Cir. 2004)).

prisoner "objects either in writing or through his attorney to being transferred to a suitable facility for care or treatment."[7] Section 4245 further provides:

> [I]f, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General. The Attorney General shall hospitalize the person for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier.[8]

Although the statute does not define the word "transferred," when read in context, it is apparent that the term encompasses more than the narrow circumstances advanced by Appellant. We note first that the common definition of "transfer" is not restricted in meaning to only physical conveyances or a change in physical location.[9] A "transfer" contemplates a change, and can include changes such as a change of status or ownership. The meaning of "transferred" in § 4245 should not be read in isolation from its statutory context. That section authorizes the Government to seek a hearing when a prisoner objects in writing to being "transferred to a suitable facility *for care or treatment.*"[10] The provision contemplates a transfer—a change from present

---

[7] 18 U.S.C. § 4245(a).

[8] *Id.* § 4245(d).

[9] BLACK'S LAW DICTIONARY 1636 (9th ed. 2009) ("To convey or remove from one place *or one person* to another; to pass or hand over from one to another, esp. to change over the possession *or control* of." (emphasis added)); OXFORD ENGLISH DICTIONARY, http://www.oed.com/view/Entry/204699 ("2. *Law.* To convey or make over (title, right, or property) by deed or legal process.") (last visited Sept. 4, 2013).

[10] 18 U.S.C. § 4245(a) (emphasis added).

circumstances—for a specified purpose—psychiatric care or treatment. Similarly, § 4245(d), authorizing the Attorney General to "hospitalize the person for treatment in a suitable facility" after that person has been committed "to the custody of the Attorney General" focuses on treatment rather than mere physical transfer.[11]

Common sense also dictates this interpretation. If a commitment could only be authorized if a physical transfer is to occur, then any prisoner could avoid commitment altogether by agreeing to a physical transfer and then, once moved to the suitable facility, objecting to the care or treatment. There is no reason to believe that Congress, in enacting commitment procedures, intended to permit prisoners to defeat the object of commitment (treatment) by voluntarily residing in a treatment facility but refusing care. Congress has given the BOP wide latitude to operate facilities and determine the proper physical placement of prisoners and others committed to its care.[12] We discern no congressional intent to preclude the BOP from operating a multipurpose facility that provides psychiatric care in addition to housing general-population prisoners. Under Appellant's interpretation, no general-population prisoner in such a facility could be committed for the purpose of receiving psychiatric treatment at that same facility since there would be no physical transfer.

---

[11] *Id.* § 4245(d).

[12] *See id.* § 4042(a)(2) (mandating that the BOP "provide suitable quarters and provide for the safekeeping, care, and subsistence of all [persons in its custody]"); *id.* § 4003 (authorizing the Attorney General to, when necessary, construct suitable facilities "used for the detention of persons held under authority of any Act of Congress, and of such other persons as in the opinion of the Attorney General are proper subjects for confinement in such institutions"); *id.* § 4081 (giving the BOP responsibility for planning "Federal penal and correctional institutions . . . as to facilitate the development of an integrated system").

Appellant's arguments concerning mootness or ripeness also fail. Appellant alleges that the § 4245 proceedings are moot because of her voluntary presence in the psychiatric facility at Carswell. She also argues that the proceeding is not ripe because she has not sought a transfer out of Carswell. Because Appellant has objected in writing to treatment, the case is not moot. It is concrete and justiciable, and therefore ripe.[13]

Finally, Appellant argues that allowing the Government to secure a commitment order in these circumstances would permit the BOP to bypass procedures and regulations governing forced medication of a prisoner. First, there is no question that the forced-medication regulations in 28 C.F.R. § 549.46 apply to prisoners committed for psychiatric care under § 4245. Pursuant to 28 C.F.R. § 549.45(c), those regulations apply to administration of psychiatric medication "[f]ollowing an inmate's involuntary hospitalization for psychiatric care or treatment as provided in this section."[14] Appellant asserts that the phrase "as provided in this section" leaves open the possibility that inmates committed under § 4245 are excluded because the phrase refers only to certain inmates, such as material witnesses and immigration detainees, who are committed under the procedures outlined in § 549.45(b). There is no basis for this interpretation. Appellant herself concedes that "[t]he regulations admittedly do not explicitly dispense with the § 549.46 protections against involuntary medication upon issuance of a judicial hospitalization order." The

---

[13] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) ("A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." (internal quotation marks omitted) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)).

[14] 28 C.F.R. § 549.45(c).

phrase "as provided in this section" plainly refers to the entirety of § 549.45, which includes a subsection applicable to inmates committed under § 4245.[15] There is no reason to suppose an order of commitment under § 4245 alters the BOP's obligation to follow the procedures outlined in § 549.46.

Appellant also argues that, even if the forced-medication regulations do apply, the Government intends to ignore them in this case. In support of this assertion, Appellant argues that the Government has not fully explained its reasons for seeking a commitment and that a significant portion of the commitment hearing was focused on psychiatric medication. Appellant's assertion amounts to nothing more than speculation that the Government may intend to violate its own regulations, which we normally do not assume.[16] Furthermore, although we held in *United States v. White*[17] that it is improper to use a commitment hearing to bypass forced-medication regulations, in that case the Government explicitly sought a forced-medication order as part of a competency hearing.[18] The Government has not sought such order here.

Because Appellant objected in writing to the purpose of her hospitalization (treatment of her mental illness), the Government's petition for a commitment hearing under § 4245 was authorized.

---

[15] 28 C.F.R. § 549.45(a).

[16] *Cf. Medina Cnty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010) ("'Absent evidence to the contrary, we presume that an agency has acted in accordance with its regulations.'" (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1223 (11th Cir. 2002)).

[17] 431 F.3d 431 (5th Cir. 2005).

[18] *White*, 431 F.3d at 434.

## III

Appellant also challenges the evidentiary standard specified in § 4245. In order to commit an inmate, the Government must prove by a preponderance of the evidence that the inmate "is presently suffering from a mental disease or defect" and that the inmate "is in need of custody for care or treatment" of that disease or defect.[19] Appellant argues that application of the preponderance standard violates her constitutional rights and that due process requires proof by clear and convincing evidence.

In *Addington v. Texas*,[20] the Supreme Court held that the clear and convincing burden of proof is required for civil commitment of an unincarcerated person,[21] but the Court has never held that the standard is required for commitment of one incarcerated for a crime. In *Vitek v. Jones*,[22] the Court held that commitment of a prison inmate does implicate a distinct liberty interest protected by due process but did not reach the question of what burden of proof was required to protect that interest.[23] Nor has this court answered that question, although we have previously held that application of the preponderance standard is not reversible under plain error review.[24] However, we need not determine today which standard of proof applies because we hold

[19] 18 U.S.C § 4245(d).

[20] 441 U.S. 418 (1979).

[21] *Addington*, 441 U.S. at 432-33.

[22] 445 U.S. 480 (1980).

[23] *Vitek*, 445 U.S. at 494.

[24] *United States v. Muhammad*, 165 F.3d 327, 334 (5th Cir. 1999).

that the evidence adduced at the commitment hearing was sufficient under either standard, and as a result, any error in applying the preponderance standard was harmless.

In circumstances similar to those in this case, we have held that application of the incorrect burden of proof by the district court is subject to harmless error review.[25] We recognize that the outcome of a case can turn on the burden of proof; it is axiomatic that evidence sufficient to prove by a preponderance is not necessarily clear and convincing.[26]  Use of the preponderance burden of proof when clear and convincing evidence is mandated may require reversal, but it may be harmless error when the evidence is substantial and undisputed.[27]  In this case, the evidence is overwhelmingly one-

---

[25] *See Lowenfield v. Phelps*, 817 F.2d 285, 295 (5th Cir. 1987) (holding that, even if the district court erred in placing the burden of proof on the defendant to show he was incompetent to stand trial, the result was harmless error); *Gardner v. Wilkinson*, 643 F.2d 1135, 1137 (5th Cir. Unit A 1981) ("The possible application of the wrong standard of proof may not warrant reversal if the misapplication would not harm the losing party . . . ."); *see also* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.").

[26] *Addington*, 441 U.S. at 424-25; *see also In re Brisco Enters., Ltd.*, 994 F.2d 1160, 1164 (5th Cir. 1993) ("'Preponderance' means that [the fact being proved] is more likely than not. 'Clear and convincing' is a higher standard and requires a high probability of success." (footnote omitted)).

[27] *Compare Gardner*, 643 F.2d at 1137 (holding that application of the wrong standard of proof required reversal when the evidence presented was purely circumstantial and included contradictory expert testimony), *with Lowenfield*, 817 F.2d at 295 (holding that overwhelming evidence of competency to stand trial rendered harmless any potential error the court made in placing the burden of proof on the defendant to show incompetency rather than on the government to show competency).

sided, and Appellant is unable show that it is reasonably likely her substantial rights were affected.[28]

There is substantial, undisputed evidence of the elements the Government is required to prove. The record contains uncontroverted evidence from multiple witnesses that Appellant suffers from a mental disease or defect. Both Dr. Cherry and Appellant's own psychiatrist, Dr. Emily Fallis, testified that Appellant suffered from a mental condition. Dr. Cherry diagnosed Appellant with schizoaffective disorder and antisocial personality disorder and testified that Appellant suffers from delusions, "becomes floridly psychotic" without treatment, is unable to attend to her personal hygiene, and is aggressive and abusive towards others. Among Appellant's delusions are denial that she had has any medical problems despite being diagnosed with and treated for coronary artery disease, hypertension, Type 2 diabetes, obesity, and hyperlipidemia. Appellant also denies she had a heart attack in 2010. Dr. Fallis answered in the affirmative when asked whether Appellant suffered from a mental condition and agreed with the diagnosis of schizoaffective disorder, although she questioned the specific subtype of disorder.

Similarly, the evidence is clear and convincing that it was necessary to commit Appellant for treatment of her mental condition. It is undisputed that Appellant's refusal of medical treatment for her heart condition and diabetes put her at significant risk, making her a danger to herself. Furthermore, the evidence is unequivocal that her untreated mental condition was the cause of her

---

[28] *See Perez v. Tex. Dep't of Criminal Justice, Institutional Div.*, 395 F.3d 206, 211 (5th Cir. 2004) ("[I]f there is a reasonable likelihood that a substantial right was affected, we should not find the error harmless." (quoting *Johnson v. William C. Ellis Sons Iron Works, Inc.*, 609 F.2d 820, 823 (5th Cir. 1980))).

belief that she did not need medical treatment. Appellant believed both that she had no medical problems and that the psychotropic drug treatments were the cause of her medical problems. Dr. Cherry testified that Appellant refused necessary medical treatment when her mental illness was not treated, and Dr. Serrano-Powers testified that Appellant was in "grave[] physical danger" without the medical treatment. Dr. Fallis agreed that psychiatric treatment was necessary to address Appellant's "life-threatening medical conditions." Although there is some dispute as to whether treatment was necessary to address Appellant's belligerence and aggression, there is clear and convincing evidence that psychiatric treatment was necessary to ensure that Appellant's medical conditions could be properly treated.

\* \* \*

The judgment of the district court is AFFIRMED.