# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30169

United States Court of Appeals
Fifth Circuit

**FILED**
August 13, 2018

Lyle W. Cayce
Clerk

MALCOLM KELSO, doing business as Irontree Group,

Plaintiff–Appellant,

v.

CHRISTINE A. BUTLER; CHRISTINE A. BUTLER, P.A.; HUMBLE HOLDINGS, L.L.C.; MARGARET HUMBLE LANTZ FAMILY, L.L.C.; HEBERT FAMILY HOLDINGS, L.L.C.; HUMBLE WOODS, L.L.C.; VELMA HUMBLE HEBERT,

Defendants–Appellees.

Appeals from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, OWEN, and ELROD, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

After plaintiff Malcolm Kelso rested his case, opposing counsel moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. The district court granted the motion. Kelso requests that we reverse and remand, contending that the motion did not "specify . . . the law and facts that entitle[d] the movant to the judgment."[1] We affirm the district court's judgment.

---

[1] FED. R. CIV. P. 50(a)(2).

No. 15-30169

I

This suit asserting breach of contract arises from Kelso's consulting work for Christine Butler, a Florida attorney and accountant, who managed certain real property in Vermilion Parish, Louisiana. Butler's mother and aunts owned that property and, acting through a number of limited liability companies (the Humble family entities) created to manage various interests in the property, authorized Butler to act on their behalf.

According to uncontroverted trial testimony, Butler agreed in 2005 to pay Kelso $400 per hour for a maximum of fifty hours per month as a "litigation consultant" to assist the family in reclaiming mineral servitudes in the property. There was also uncontroverted testimony that Kelso falsely represented to Butler that he had degrees from Stanford University and the University of California at Berkeley.[2] At Kelso's urging, Butler agreed to file a number of lawsuits against various parties. She later agreed to grant Kelso an option to purchase a twenty-five percent interest in certain mineral rights. The association between Butler and Kelso was a tumultuous one, but it largely ended when Kelso was imprisoned for tax evasion in November 2008. By the time Kelso's work for Butler and the Humble family entities was complete, Butler had paid Kelso approximately $766,000, in addition to granting the option.

Kelso sued Butler and the Humble family entities in 2012, asserting a number of claims.[3] First, Kelso alleged that the defendants breached the

---

[2] C*f. Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 504 n.5 (Del. 2005) (noting that Kelso has been "serially sanctioned, found liable for civil theft in securities fraud and incarcerated for contempt of court").

[3] A & H Oil Interest LLC, a Texas company owned by Kelso to which Kelso had assigned his twenty-five percent mineral interest, was also a plaintiff in the suit, but was dismissed after plaintiffs' counsel withdrew. The defendants are Butler; her corporation, Christine A. Butler P.A.; and the Humble family entities: Humble Holdings LLC; Margaret

consulting agreement by failing to compensate him fully for his work and breached a side agreement regarding the division of certain litigation expenses. Second, Kelso alleged that the defendants breached the option agreement, contending that their transfer of the twenty-five percent mineral interest was invalid and was improperly subject to a mortgage that greatly diminished its value. Finally, Kelso alleged that the defendants breached an agreement to lease the property to a developer.[4] The district court denied cross-motions for summary judgment and set the matter for trial.

After obtaining two continuances, Kelso's counsel withdrew for health reasons. The district court denied Kelso a third continuance, and although he had months to obtain new counsel, he did not do so.

As a result, Kelso represented himself at the trial. His first witness was James Hardwick, a geologist who testified only that the Vermilion Parish property "would be a reasonable place to look for additional hydrocarbons." The second, and only other, witness was Butler. Kelso's meandering examination of Butler consumed over six hours; the district court judge repeatedly admonished him to avoid irrelevant lines of questioning and to refrain from testifying while posing questions to Butler. Kelso declined to call further witnesses and rested his case. In the exchange that followed, Butler's attorney moved for judgment as a matter of law:

> THE COURT: Motion?
> MR. DURIO: Yes, Your Honor.
> THE COURT: All right.
> MR. DURIO: We'd like to move for judgment as a matter of law.
> THE COURT: Under Rule 50?

---

Humble Lantz Family LLC; Hebert Family Holdings LLC; Humble Woods LLC; and Velma Humble Hebert.

[4] Kelso's complaint did not clearly delineate causes of action or the legal theories underlying them. We focus only on those claims clearly raised in his briefing on appeal. *See Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004) ("Issues not raised or inadequately briefed on appeal are waived.").

No. 15-30169

MR. DURIO: Right.

There followed a brief colloquy regarding Butler's counterclaim and a recess. The exchange regarding the counterclaim continued after the recess, and when the discussion concluded, the district court then announced its ruling: "I'm going to grant the Rule 50. I have really no choice. Mr. Kelso has never been sworn, never put on any evidence from himself. The Rule 50 is granted." Kelso did not seek to be heard, object or otherwise oppose the Rule 50 motion at any point during the proceedings. After another recess, the district court granted a Rule 50 motion with regard to Butler's counterclaim— a ruling not at issue here—and the proceedings were adjourned. Kelso timely appealed.

## II

Kelso presents three issues in this appeal. He contends that there was evidence on each element of his breach of contract and specific performance claims and therefore that the district court erred in granting the Rule 50 motion; the district court should not have granted the Rule 50 motion because it did not meet Rule 50's requirement of specificity; and the district court erred in failing to grant a continuance. Butler contends that our review of whether the district court erred in granting the Rule 50 motion should be for plain error since Kelso did not object in the district court. For the reasons considered below, we do not resolve this issue because under either standard of review, Kelso does not prevail.

## A

"Judgment as a matter of law may be granted when a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party

4

on that issue."[5]  Federal Rule of Civil Procedure 50(a) requires that motions for judgment as a matter of law "specify the judgment sought and the law and facts that entitle the movant to the judgment."[6]  The most basic purpose of a Rule 50(a) motion is to "alert the opposing party to [any] insufficiency before the case is submitted to the factfinder, thereby affording [the non-moving party] an opportunity to cure any defects in proof should the motion have merit."[7]

Assuming, without deciding, that Butler's motion did not sufficiently apprise Kelso of deficiencies in proof and that the district court therefore erred in granting Butler's Rule 50 motion, under a de novo standard of review, Kelso must nevertheless establish that the error was harmful.  Generally, and in a case like the present one, 28 U.S.C. § 2111 requires appellate courts to "give judgment . . . without regard to errors or defects which do not affect the substantial rights of the parties."[8]  Reversal is not automatic upon recognition of error.[9]  Even in the criminal law, "[o]nly the rare type of error—in general, one that 'infect[s] the entire trial process' and 'necessarily render[s] [it] fundamentally unfair'—requires automatic reversal."[10]  In civil cases, we have

---

[5] *Hurst v. Lee Cty.*, 764 F.3d 480, 483 (5th Cir. 2014); s*ee also* FED. R. CIV. P. 50(a)(1).

[6] FED. R. CIV. P. 50(a)(2).

[7] *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1315 (5th Cir. 1995) (quoting *Bohrer v. Hanes Corp.*, 715 F.2d 213, 216 (5th Cir. 1983)); *see also Guilbeau v. W.W. Henry Co.*, 85 F.3d 1149, 1160 (stating that the purpose of the specificity requirement "is to assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment" (quoting FED. R. CIV. P. 50 advisory committee's note to 1991 amendment)).

[8] *See also* FED. R. CIV. P. 61; *Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009) (describing statute as "seek[ing] to prevent appellate courts from becoming 'impregnable citadels of technicality'" (quoting *Kotteakos v. United States,* 328 U.S. 750, 759 (1946))).

[9] *See generally* 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2888 (3d ed. 2012) (collecting cases involving application of harmless error review to "a wide spectrum of issues," including decisions on dispositive motions).

[10] *Glebe v. Frost*, 135 S. Ct. 429, 430-31 (2014) (per curiam) (second, third, and fourth alterations in original) (quoting *Neder v. United States,* 527 U.S. 1, 8 (1999)).

No. 15-30169

conducted a harmless error analysis when errors such as the *sua sponte* issuance of summary judgment without notice,[11] the mistaken denial of a jury trial,[12] and the imposition of an incorrect burden of proof[13] were committed by the district court.

To the extent our review is for plain error, Kelso "must show that the district court committed an error that was clear or obvious and that affected [Kelso's] substantial rights."[14] We will correct such an error only if Kelso can "show that the error has a serious effect on the fairness, integrity, or public reputation of judicial proceedings."[15]

When the deficiencies in the non-movant's case are insurmountable, the movant's failure to "specify . . . the law and facts that entitle the movant to the judgment"[16] does not impair the achievement of Rule 50's purposes. Alerting an opposing party to an insufficiency in its case only serves a purpose of Rule 50 when it is an insufficiency that the party can remedy.

---

[11] *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 725 (5th Cir. 2003) (finding the lack of notice harmful); *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,* 28 F.3d 1388, 1398 (5th Cir. 1994) (finding lack of notice harmless because "[i]t does not appear that the [plaintiffs] have any additional evidence to offer regarding the [defendants'] liability; they do not identify any, and we find none in our review of the record").

[12] *Bowles v. U.S. Army Corps of Eng'rs,* 841 F.2d 112, 117 (5th Cir. 1988) (concluding that a denial of a jury trial to a *Bivens* plaintiff was harmless where "the plaintiff's case 'would not have survived a motion for a directed verdict'" (quoting *Cox v. C.H. Masland & Sons, Inc.,* 607 F.2d 138, 145 (5th Cir. 1979))).

[13] *Sealed Appellee 1 v. Sealed Appellant 1,* 767 F.3d 418, 425 (5th Cir. 2013) (upholding district court's commitment of prisoner to mental-health treatment facility after finding that any error as to the burden of proof applied by the district court was harmless); *Gardner v. Wilkinson,* 643 F.2d 1135, 1137 (5th Cir. Unit A Apr. 1981) (concluding that jury instruction on the burden of proof in an insurance coverage case was erroneous, then reversing judgment because the court "[could not] say that the application of the wrong standard would be harmless error").

[14] *United States v. Baker,* 538 F.3d 324, 332 (5th Cir. 2008) (quoting *United States v. Thompson,* 454 F.3d 459, 464 (5th Cir. 2006)).

[15] *Id.* (quoting *Thompson,* 454 F.3d at 464).

[16] FED. R. CIV. P. 50(a)(2).

6

No. 15-30169

## B

The question is whether Kelso could have presented additional evidence from which a reasonable jury would have a legally sufficient basis to find for him.[17]  For purposes of this inquiry, as well as whether the evidence that Kelso did present was sufficient to require submission to the jury, we consider the evidence in the light most favorable to Kelso, drawing all factual inferences in his favor and "leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury."[18]

Kelso contends that the district court erred by concluding that his evidence was insufficient to support a jury verdict.  He insists he presented or could have presented sufficient evidence on three claims.

First, Kelso argues that judgment as a matter of law was inappropriate with respect to his claim that the defendants breached their consulting agreement with him.  The evidence presented at trial, in the form of testimony by Butler, suggested that the agreement was for a fee of $400 per hour with a cap of $20,000 per month.  Kelso contends, to the contrary, that the agreement was simply for $20,000 per month.  There is also a potential factual disagreement about the extent to which the defendants' debt to Kelso was satisfied.  Butler, in uncontroverted trial testimony, stated that the debts she acknowledged in various letters to Kelso were subject to various offsets she discovered when re-examining the books.  Kelso, relying primarily on an affidavit he executed and correspondence from Butler, now contends that the defendants still owe him $117,600 and that if apprised of deficiencies in his

---

[17] *See* FED. R. CIV. P. 50(a)(1); *Hurst v. Lee Cty.*, 764 F.3d 480, 483 (5th Cir. 2014) ("Judgment as a matter of law may be granted when a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.").

[18] *Hurst*, 764 F.3d at 483 (citing *Gonzalez v. Fresenius Med. Care N. Am.,* 689 F.3d 470, 474 (5th Cir. 2012)).

7

case, he could have presented evidence that would have provided a legally sufficient basis for the jury to find for him on this claim.

We agree with Butler that Kelso's claims are claims on an "open account" under Louisiana law and that Kelso filed his suit after the prescriptive period had run. According to Louisiana law, "[a]n action on an open account" is subject to a prescriptive period of three years, beginning on the day the payment is "exigible."[19] An "open account" is "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions," and "shall include debts incurred for professional services, including but not limited to legal and medical services."[20] Although regular billing can suggest the existence of an open account, it is not dispositive.[21] The prescriptive period generally "runs from the date of the last charge, entry, purchase, payment, or other transaction."[22]

Here, the defendants' debt to Kelso was plainly debt incurred for professional services which had become past due. Kelso's pleadings and Butler's testimony unequivocally establish an expectation of regular payment in exchange for professional services, and the testimony presented at trial suggests that some of those payments were not timely made. Kelso identifies no evidence he could have presented to convince a jury otherwise. Although he claims that the fact that he received an option to purchase a fraction of the

---

[19] LA. CIV. CODE art. 3494, 3495.

[20] LA. REV. STAT. § 9:2781(D).

[21] *See Mid-S. Analytical Labs, Inc. v. Jones, Odom, Spruill & Davis, LLP*, 40,089, p. 10 (La. App. 2 Cir. 9/23/05), 912 So. 2d 101, 107 (finding the fact that "there is no evidence of an agreement regarding billing, and no regular billing occurred" to be among the factors suggesting the absence of an open account arrangement); *see also Frey Plumbing Co. v. Foster*, 2007-1091, p. 6 (La. 2/26/08), 996 So. 2d 969, 972 (holding that the open account statute "must be applied as written" and overruling "prior case law [that] imposed any requirements . . . inconsistent with the clear language" of the statute).

[22] *Lopez v. Evans*, 2007-1243, p. 3 (La. App. 1 Cir. 6/6/08), 992 So. 2d 547, 549.

property's mineral interests suggests that the arrangement was not an open account, he provides no explanation or authority for that proposition. Further, Kelso does not suggest that he rendered services pursuant to the agreement after November 2008, meaning that the prescriptive period elapsed well before he filed suit in October 2012. We therefore conclude that any error committed by the district court in granting Butler's general Rule 50(a) motion on this claim was harmless and that, under a plain error standard of review, Kelso has failed to satisfy the third and fourth prongs.[23]

Second, Kelso claims that he is entitled to specific performance in connection with his option to purchase twenty-five percent of the mineral interests in the property. Kelso notes that Butler stipulated that the assignment of the interest to Kelso suffered from certain defects, and was also rendered "nearly worthless" by a mortgage placed on the property. He proposes that Butler and the Humble family entities "be ordered to specifically perform the Option by curing the title issues identified by their attorney," and that "the mortgage should be declared subordinate to Kelso's 25% interest."

Kelso provides no authority for the proposition that the court can order the defendants to cure title defects in the assigned mineral interests especially where, as here, the assignment was made without warranty of title. Similarly, he cites no authority that would permit the court to subordinate the mortgage to his interest in the way that he proposes. We conclude that the district court's grant of the defendants' general Rule 50 motion did not prejudice Kelso

---

[23] Kelso objects that this court lacks jurisdiction to reconsider the district court's denial of Butler's motion for partial summary judgment on this point. However, the district court only decided that, at that stage of the litigation, "there are genuine issues of material fact with respect to whether an open account existed." We surely have jurisdiction to affirm the district court's final order entering judgment as a matter of law, which is presumably based in part on evidence introduced at trial and thus not available at the summary judgment stage, and the defendants were obliged to appeal their own victory in the district court in order to defend the judgment below.

because he could not have introduced evidence legally sufficient to support a jury verdict in his favor on this claim for relief.

Third, Kelso claims that judgment as a matter of law was unwarranted as to his claim that Butler breached a mineral development contract with an oilman named Randall May. Butler, Kelso, and May signed a "Terms of Trade" agreement in November 2008, just before Kelso reported to prison. That agreement, among other things, envisaged a two-year lease at a fixed amount per net mineral acre, a twenty-five percent royalty to the mineral owners, and a "[s]ide agreement to be negotiated on litigation rights on [the] current lawsuit." It bears the signatures of the parties below text indicating that those parties "agree[] to" those terms.

Louisiana law provides that "[w]hen, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form."[24] It also provides that "[a] contract to enter into a lease at a future time is enforceable . . . unless the parties understood that the contract would not be binding until reduced to writing or until its other terms were agreed upon."[25] We have said, in an unpublished opinion, that "Louisiana law provides that even an agreement to lease is not binding if the parties contemplate more,"[26] and Kelso does not argue otherwise. In fact, Kelso introduced at trial a letter he wrote indicating that "after signing the agreement with [May], [Butler] was

---

[24] LA. CIV. CODE art. 1947; *see also Baldwin v. Bass*, 685 So.2d 436 (La. Ct. App. 1996) (holding oral contract invalid where the parties "each . . . testified they anticipated a written and signed contract before either would be bound").

[25] LA. CIV. CODE art. 2670.

[26] *A S J Interest, L.L.C. v. Chesapeake La., L.P.*, 547 F. App'x 408, 409 (5th Cir. 2013) (per curiam); *see also Graham v. Chesapeake La., L.P.*, No. 5:13-CV-1571, 2013 WL 5673858, at *4 (W.D. La. Oct. 16, 2013) (collecting authorities for the proposition that "letters of intent" and "agreements to agree" are not binding when they "contemplate some further conditions being fulfilled"), *aff'd*, 568 F. App'x 307 (5th Cir. 2014) (per curiam).

to prepare a formal lease and joint operation agreement in accordance with the Agreement." In addition, Kelso points to no further evidence that he could have presented in order to establish that the agreement was enforceable. Under these circumstances, we conclude that Kelso could not have presented legally sufficient evidence to support his claim for breach of contract.

### III

Kelso's counsel initially argued on appeal that the district court erred by denying Kelso's third motion to continue the trial. Although he disavowed that claim at oral argument, we briefly consider it here. Kelso's counsel filed a motion to withdraw on November 14, 2014. In that motion, he represented that he had notified Kelso by email on September 25, 2014 of his need to withdraw and that Kelso was aware that a jury trial was scheduled in the case for January 26, 2015. The court granted the motion to withdraw on November 19, 2014, keeping the scheduling order in effect. On December 15, 2014, Kelso moved for a continuance, citing discovery delays and his need to obtain counsel. The district court denied the motion two days later.

We conclude that the district court did not abuse its "exceedingly wide" discretion by denying Kelso's motion for a continuance.[27] Kelso learned that his counsel would have to withdraw four months prior to the date his trial commenced. After his counsel withdrew, he waited nearly one month before moving for a continuance. The district court, which had already granted Kelso's two previous motions for a continuance, did not abuse its discretion by failing to grant a third. Any prejudice to Kelso was caused not by the district court's denial of his motion, but by the failure of Kelso—a self-styled "litigation consultant" with considerable familiarity with the legal system—to find

---

[27] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir. 1986); *see also HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549 (5th Cir. 2000).

No. 15-30169

replacement counsel in the four months he had to do so.  Put differently, this is not a case in which the defendant party was "deprive[d] . . . of [his] rightful day in court" by the trial judge's failure to accommodate unforeseen circumstances.[28]

*    *    *

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[28] *Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Corp.*, 423 F.2d 842, 844 (5th Cir. 1970).