# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20667

United States Court of Appeals
Fifth Circuit

**FILED**
November 14, 2018

Lyle W. Cayce
Clerk

LUIS ENRIQUE CRISTAIN,

> Plaintiff - Appellant

v.

HUNTER BUILDINGS & MANUFACTURING, L.P.,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before HAYNES, HO, and DUNCAN, Circuit Judges.

HAYNES, Circuit Judge:

Under the Texas Labor Code, an employer is prohibited from retaliating against an employee who files a workers' compensation claim in good faith. TEX. LAB. CODE § 451.001(1). Plaintiff Luis Enrique Cristain, who sustained a work-related injury and was fired shortly thereafter, filed suit claiming he was terminated for filing such a claim. He also claimed age discrimination. The district court denied defendant Hunter Buildings & Manufacturing, L.P.'s summary judgment motion, and the case proceeded to trial. The district court denied Hunter's motion for a judgment as a matter of law in the middle of Cristain's case in chief. For reasons unexplained and difficult to discern, the district court then granted Hunter's renewed motion for judgment as a matter

of law at the close of the evidence on the retaliation claim, but sent the age discrimination issue to the jury. The jury returned a verdict for the defense on that claim, a judgment for the defendant was entered, and a timely appeal followed. We REVERSE and REMAND the adverse ruling on the retaliation claim and otherwise AFFIRM.

In August 2014, Cristain was hired by Hunter as a "Helper." His duties included painting, maintenance, and cleaning. On Thursday, February 5, 2015, Cristain was assigned to clean a ceiling while standing on a scaffold. The scaffold collapsed, and Cristain sustained an injury. Kevin Edmonds, Hunter's Environmental Health and Safety Manager at the time, eventually took Cristain to a doctor after allegedly delaying for a period of time. The doctor diagnosed Cristain with a lumbar strain and released him to work "as tolerated." Thereafter, Edmonds began to dominate Cristain's life: he argued with Cristain's request to take the next day off for recovery purposes (subsequently relenting), he showed up unannounced at Cristain's house that Sunday to "check on him," and he insisted on driving Cristain to both work and the doctor. Edmonds was not Cristain's supervisor, had not previously been involved in Cristain's employment, and had only seen him once or twice before the accident.

Eight days after the accident and a few days after filing the workers' compensation paperwork, Edmonds offered Cristain a "Flow Monitor" job, a position Edmonds and the Outfitting Department created in which Edmonds would become Cristain's new supervisor. The evidence, taken in the light most favorable to Cristain, reflects that Cristain was set up to fail in this invented position for which he received no training and for which he was not well-suited. Hunter was unable to produce any forms or reports regarding Cristain's time as a Flow Monitor, and Edmonds testified that Hunter had lost them.

Cristain had no disciplinary history as a helper.  Immediately after Cristain began his new position, Edmonds claimed that Cristain was taking numerous unauthorized breaks, an allegation Cristain denies.[1]  Three days later, Edmonds gave Cristain a verbal warning for allegedly failing to pick up paperwork for his Flow Monitor job, and documented this and the alleged incidents from the prior two days.  The document had checked boxes next to "Unsatisfactory Work Quality" and "Working on Personal Matters."

Edmonds also investigated the scaffold accident and concluded it was Cristain's fault.  Two weeks after the accident, Edmonds addressed the scaffold incident with Cristain in a meeting.  Cristain claims he was immediately fired, while Edmonds contends that Cristain became belligerent and profane, prompting Edmonds to fire him.  Regardless, it is undisputed Cristain was fired fifteen days after the accident and eleven days after Edmonds filed the workers' compensation documentation. Cristain denies yelling or cursing at Edmonds.  The termination document makes no mention of any abusive language, or even the incidents from the immediately preceding days.  Instead, the only boxes checked off are "Violation of Safety Rules" and "Violation of Company Policy/Practices."  Under "Description of the Incident," Edmonds wrote that Cristain "took it upon himself to utilize a scaffold of which he was not trained or authorized to use" and "[f]ailed to perform a job hazard analysis for task assigned."  Both comments refer to the February 5 accident.

We review a district court's grant of judgment as a matter of law de novo. *Laxton v. Gap Inc.*, 333 F.3d 572, 577 (5th Cir. 2003).  Judgment as a matter of law is appropriate where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Kelso v. Butler*, 899 F.3d 420, 424 (5th Cir. 2018).  The court "must draw all reasonable

---

[1] Edmonds's documentation around that time shows only one unauthorized break.

inferences in favor of the nonmoving party, and . . . may not make credibility determinations or weigh the evidence." *Laxton*, 333 F.3d at 577 (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)).

The retaliation claim is governed by Texas law.  Texas Supreme Court precedent dictates that factfinders may rely on circumstantial evidence of retaliation.

> Circumstantial evidence *sufficient* to establish a causal link between termination and filing a compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false.

*Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996) (emphasis added).  An intermediate Texas court of appeals has also suggested that "proximity may establish a causal connection between [the] complaint and the adverse employment action when . . . they are separated by weeks, as opposed to months and years." *Green v. Lowe's Home Ctrs. Inc.*, 199 S.W.3d 514, 522–23 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (alterations in original) (quoting *Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 529 (Tex. App—Houston [1st Dist.] 2000, pet. denied)).

It is unclear whether the *Continental Coffee* list constitutes "elements" or merely "factors" in the determination of whether retaliation occurred.  The Texas Supreme Court's phrasing suggests that these are factors, not elements. That said, we conclude sufficient evidence of retaliation was presented to support submission to the jury however one views the *Continental Coffee* list.

First, there is stark temporal proximity—Cristain was fired approximately two weeks after his injury.  As for the *Continental Coffee* factors, it is undisputed that the decisionmaker, Edmonds, was aware of the workers'

compensation claim. It is also undisputed that Edmonds did not follow Hunter's progressive discipline policy, which began at step one, a verbal warning, and progressed to step five, termination. It is hotly disputed, however, whether it was appropriate to fire Cristain without following that five-step policy (i.e., the parties dispute whether Cristain cursed and yelled at Edmonds, which might justify an immediate firing). As far as the stated reason for discharge, the discrepancy between Cristain's termination paperwork and Edmonds's testimony is a credibility issue, which is for a jury to assess.[2]

Turning to the two factors most disputed in the briefing—the expression of a negative attitude and the treatment compared to "similarly situated" employees—we conclude there is some evidence to support those factors, even though such evidence is not required. In addition to his odd and suffocating behavior described above,[3] Edmonds repeatedly made statements indicating doubt about whether Cristain was actually injured. For example, Edmonds described Cristain's injury as a "supposed injury," Cristain's physical restrictions as "self-imposed," and his physical limitations from the injury as "perceived restrictions." A reasonable juror could infer a negative attitude towards Cristain because of his workers' compensation claim.

The "similarly situated" employee prong is difficult to determine, given the varying reasons for Cristain's termination and the fact that Hunter controls the evidence of this issue. At trial, Cristain presented evidence of Hunter's actions toward other employees who filed workers' compensation

---

[2] Edmonds's testimony also differed from his statement to the EEOC in August 2015.

[3] We recognize that a jury could conclude that Edmonds's actions of "checking on Cristain" at his home on a Sunday and driving him to work and medical appointments reflect a caring boss. But, given their lack of a relationship before the accident, a jury could also infer this was an effort to intimidate Cristain. In any event, the district court was required to view the evidence in the light most favorable to Cristain as the non-movant.

claims between January 2012 and December 2015. During that time, eleven other employees filed claims for work-related injuries. Two of the eleven were terminated within 30 days of their injury, four others were terminated within 90 days, and one other was terminated within 150 days.

Finally, by highlighting Hunter's shifting explanations for his termination, Cristain has presented evidence to support the notion that the stated reason for discharge was false. In sum, Cristain has presented considerable evidence that would support a jury verdict in his favor. Therefore, we reverse.

Cristain also argues that Hunter's motion for judgment as a matter of law failed to identify the elements on which the motion was based, as required under Rule 50(a)(2). Cristain further argues that the district court did not identify the deficiencies in his evidence, which deprived him of an opportunity to respond. Our ruling above makes it unnecessary to rule upon these arguments. However, regardless of whether or not an explanation is required, it is highly beneficial. Of course, it assists counsel and this court on appeal, but, more importantly, it can avoid error in the first place. Even the most conscientious and careful district judge may overlook or mishear a piece of evidence that makes the difference in granting or denying such a motion. By giving an explanation, counsel has a chance to correct such an error if there is one.

We REVERSE and REMAND for a new trial on the retaliation claim, and AFFIRM the remainder of the judgment.[4]

---

[4] Cristain does not challenge the adverse jury verdict on the age discrimination claim.